**Daniel L. HESS and Hisanori Morimoto, Plaintiffs,**

**v.**

**P. A. ESPERDY, District Director, Immigration & Naturalization Service, Department of Justice, Defendant.**

United States District Court
S. D. New York.
Sept. 21, 1964.

Seth H. Dubin, Washington, D. C., for plaintiffs.

Robert M. Morgenthau, U. S. Atty., by James G. Greilsheimer, Asst. U. S. Atty., for defendant.

TYLER, District Judge.

Plaintiffs bring this action under the Declaratory Judgment Act (28 U.S.C. § 2201) and Section 10 of the Administrative Procedure Act (5 U.S.C. § 1009) seeking review of defendant's denial of plaintiff Hess' petition to classify plaintiff Morimoto as a temporary worker under § 101(a) (15) (H) (ii) of the Immigration and Nationality Act of 1952 [8 U.S.C. § 1101(a) (15) (H) (ii)]. Defendant moves for summary judgment and dismissal of the complaint pursuant to Rule 56, F.R.Civ.P.

Plaintiff Hess is in the sales promotion business in New York City. He has extensive entres in the Japanese market and would like to develop certain of these into clients. He is now especially anxious to promote sales opportunities in Japan based on matters keyed or related to the New York 1964–65 World's Fair. To develop such a sales promotion program, he requires the services in this country of a person skilled and experienced in Japanese design, graphic arts, advertising and sales promotion. To locate such an individual, he has unsuccessfully applied to two private employment agencies in New York City, the Japanese Employment Service, The Artists and Art Directors Agency, and also to the Professional Office of the New York State Employment Service. Indeed, the Director of the Bureau of Employment Security of the United States Employment Service has certified that in this category "qualified workers are not available within the United States for referral to the employer by the employment service".

Plaintiff Morimoto is a Japanese citizen skilled in various Japanese promotion and advertising techniques and in Japanese graphic design. On December 24, 1963, plaintiffs filed with defendant a petition for classification of plaintiff Morimoto as a nonimmigrant temporary worker. The petition showed, *inter alia,* that the desired services might or might not be required on a permanent basis, depending upon Hess' success in soliciting Japanese business; if they should become permanent in nature, a suitable replacement for Morimoto would be located within the American labor supply during the term of his visa, or Morimoto would be able to train an American to perform those services.

The petition was denied by the Director on the ground that the position is not of a temporary nature and hence not within the express terms of § 101 (a) (15) (H) (ii) of the Act. Upon appeal to the Regional Commissioner, the District Director's ruling was upheld and the appeal dismissed. Both the Director and the Commissioner relied heavily upon the following comment made by counsel for plaintiffs: "It is impossible to know the length of time for which Mr. Morimoto's services will be required. If the petitioner's business in this area continues to develop as planned, there will be a permanent need

for the skills Mr. Morimoto possess." Whether such reliance was justified upon the circumstances here presented is, it seems to me, debatable at the very least.

Hess claims that it is presently impossible to know for how long he will need Morimoto's skills and experience, "[s]ince the project is novel, and essentially experimental in nature". He asserts, however, that the most important period will be the first six months during which solicitation of prospective clients can be made. Thereafter, argues Hess, these unique skills and experience of Morimoto will become increasingly less essential or perhaps even valueless for the following reasons: "1) the initial solicitation period will be over; 2) if the solicitations are unsuccessful the project will be abandoned; 3) the promotion programs, if any, will have been developed and 'roughed out'; 4) the training, if necessary, of American workers in peculiarly Japanese graphic skills can be completed; and 5) any problems concerning the execution of the programs in Japan can be handled there." Plaintiffs' legal position, thus, is that the denial of the petition was erroneous because the work is temporary in nature according to previously enunciated standards of the administrative authorities and because, in any event, the test of temporality is irrelevant under the Act of 1952 and its legislative history.

Section 101 of the Immigration and Nationality Act of 1952 reads in significant part as follows:

"(a) As used in this chapter * *

(15) The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens * * *

(H) an alien having a residence in a foreign country which he has no intention of abandoning * * *

(ii) who is coming temporarily to the United States to perform other temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country * *."

According to defendant's interpretation, the statute requires two types of temporality: (1) the alien's length of stay should be temporary; and (2) the job to be performed here should be of a temporary nature. Otherwise, says defendant, Congress would not have made the statute redundant by having it contain the word "temporary" as well as the word "temporarily". Plaintiffs claim that the test or condition of temporality of position is irrelevant. None of the authorities, administrative or judicial, cited by the litigants are apposite to this phase of the controversy, nor has this court been able to find a case squarely in point.

I am in accord with defendant's view that Congress did not intend to make any portion of this statute redundant, and that the word "temporary", when inserted a second time to modify "services or labor", was intended to mean something. I cannot agree with defendant, however, that the job was meant to be temporary in the sense of there being absolutely no possibility of its surviving the alien's stay in this country.

While administrative construction of a statute is entitled to great weight, such rule does not apply where the administrative body's interpretation is not based upon its own accumulated knowledge and experience. Atchison, Topeka & Santa Fe Ry. Co. v. United States, 209 F.Supp. 35 (N.D.Ill.1962) [court is equally able to use dictionary and Congressional Record]. The construction and interpretation of a statute are judicial functions, and when there is a conflict between administrative interpretations and judicial constructions, the latter must prevail, particularly where no administrative experience and expertise has accumulated. See United States v. One 1960 Ford, 213 F.Supp. 562 (E.D. Tenn.1962). For reasons to be numerated hereinafter, I hold that the issue to be determined under § 101(a) (15) (H) (ii) is whether the likelihood is greater that the employment services rendered by the nonimmigrant alien will be temporary rather than permanent. That

there is only some slight possibility that the position might outlast the alien's stay in the United States should not, *ipso facto*, cause the petition to fail.

It seems to me that what Congress had in mind by the word "temporary" was something which is less than permanent. Thus, the vagaries of the business world, among other things, must be considered. In this sense, the present situation is distinguishable from Matter of M— S— H—, 8 I. & N.Dec. 460 (1960) which involved the application of a hospital intern made under § 101 (a) (15) (H) (i).[1]

In that case, it was held that the permanent nature of the position of a hospital intern precluded the granting of nonimmigrant status despite the fact that the alien's services were to be limited to a period of one year. The Board said, "[W]hen an intern completes his internship and moves into a residency or private practice, the work he did as an intern must still be done by someone. In this sense the position is of a permanent rather than a temporary nature." 8 I. & N.Dec. at 461.

■ That case differs from the present one, both because it falls within the ambit of a different statutory subsection, and, more important, because the factual situations are unlike. Here the services required are of a unique nature and, as presently contemplated, are largely keyed to the New York World's Fair which is of limited duration. Their duration is closely tied in with the number of business opportunities to be developed and, of course, the amount of profits to be made. Further the United States Employment Service

has certified that there are no qualified workers available for the position in the United States.

While resort to legislative history has shed little light on the question at hand, see 98 Cong.Rec., passim, it seems apparent that § 101(a) (15) (H) was enacted for the sole advantage of the United States and not as a "loophole" for the benefit of non-quota aliens.

■ Under the 1952 Act, the provisions of the old "contract labor clauses" were abandoned in favor of the temporary admission principle adopted for the purpose of selectively allowing nonimmigrants to enter the country where their labor and services were found to "best serve the American needs". Besterman, W., Commentary on the Immigration and Nationality Act, 8 U.S.C.A., pp. 42–43; 1952 Code Cong. & Adm. News, pp. 1653, 1705. Thus, where a particular "service or labor cannot be found in this country", or where unique or special needs arise in the labor market which cannot be fulfilled by labor forces, it would seem to greatly benefit the United States to allow the entrance, on a temporary basis, of subsection (H) nonimmigrants who can perform these special tasks or the even more valuable service of training workers in this country to do so. The statute should be construed so as to effectuate the purposes intended by the legislature and avoid consequences which would completely frustrate that intention. United States ex rel. Wong Kan Wong v. Esperdy, 197 F.Supp. 914 (S.D. N.Y.1961).

■ The government's motion is denied. I am reluctant, however, to direct the District Director to issue a six

1. The significant portions of the statute states:
"(a) As used in this chapter * * *
"(15) The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens * * *
"(H) an alien having a residence in a foreign country which he has no intention of abandoning * * *
"(i) who is of distinguished merit and ability and who is coming tempo-

rarily to the United States to perform temporary services of an exceptional nature requiring such merit and ability * * *."

This section is similar to the one in point in that both were apparently drafted with solely the interests of the United States in mind, but differs in the respect that subsection (ii) requires an additional showing that the services required cannot be obtained in the American market.

months visa to Mr. Morimoto as a temporary worker because I am not certain that there has been sufficient development of the facts to resolve the full implications of the meaning of "temporary" as interpreted hereinbefore and as to be applied to this controversy. Accordingly, the matter is remanded to the Service with directions that a hearing be held to determine whether the likelihood is greater that Morimoto's services will be "temporary" in the sense discussed in this memorandum rather than permanent. See United States v. Jones, 336 U.S. 641, 69 S.Ct. 787, 93 L.Ed. 938 (1949); Pacific Far East Line, Inc. v. Federal Maritime Board, 107 U.S. App.D.C. 155, 275 F.2d 184 (1960), cert. denied 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1523 (1960).

Settle an order accordingly.