GANNET CORPORATION, Appellant

v.

MELVILLE M. STEVENS, Commissioner of Labor of the Government of the Virgin Islands

Civil Nos. 38-1965—39-1965

District Court of the Virgin Islands

Div. of St. Croix

Christiansted Jurisdiction

Argued January 26, 1968

313

314

RUSSELL B. JOHNSON, Christiansted, St. Croix, Virgin Islands, *for appellant*

FRANCISCO CORNIERO, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

MARIS, *Circuit Judge*

OPINION

These are appeals by Gannet Corporation from Orders Nos. 1-1965 and 2-1965 issued by the Commissioner of Agriculture and Labor of the Government of the Virgin Islands, acting through his Director of Labor, ordering the appellant to pay back wages to certain of its nonresident alien workers.

This controversy arises out of the following facts:

The appellant, a Virgin Islands corporation engaged in the construction business, was advised by the Director of Labor of the then Department of Agriculture and Labor,[1] in notices dated February 24, 1965, that two separate complaints had been filed against appellant by nonresident alien workers, and that hearings were scheduled thereon. One complaint was filed by Frank Anthony, Austin Roberts, Vincent Gaskin, Renford Henry and James Athill and charged that appellant had not paid the prevailing wage rate for services performed by them. After holding hearings on this complaint the Director of Labor issued Order No. 2-1965 on March 15, 1965 in which he made the following findings of fact:

"1. That, Frank Anthony, Austin Roberts, Vincent Gaskin, Renford Henry and James Athill are non-residents and were bonded and employed by Gannet Corporation as laborers; That, Frank Anthony, Austin Roberts, Renford Henry and James Athill were employed from August, 1964, and Vincent Gaskin from January,

[1] The Act of March 17, 1965, No. 1343, V.I. Sess. L. 1965, p. 72, separated the Department of Agriculture and Labor into two Departments, a Department of Agriculture and a Department of Labor, headed by a Commissioner of Agriculture and a Commissioner of Labor, respectively, 3 V.I.C. §§ 291, 292, 351, 352.

1965; that, the employment of all five was terminated on February 18, 1965.

"2. That, Frank Anthony performed sundry duties for his employer, that such duties are assimilated with those of a laborer; that, he received wages varying from $1.05 to $1.25 per hour during his tenure of employment; that the prevailing rate for laborers is $1.05; accordingly, employer did not, in this instance, fail to pay the prevailing rate.

"3. That, Austin Roberts performed sundry duties for his employer, that such duties are assimilated with those of a laborer; that, he received a wage rate of $1.05 per hour during his tenure of employment; accordingly, employer did not fail, in this instance, to pay the prevailing rate.

"4. That, Vincent Gaskin performed duties for his employer, Gannet Corp., between January and February, 1965, characterized as those of a painter; that, pursuant to Wage Order No. 7, effective January 4, 1965, the rate for painters was increased to $1.50 per hour; that Vincent Gaskin worked a total of 168 regular hours @ $1.10 per hour; that, the employer failed, in this instance, to pay wages equal to those of a painter, consequently, is liable to the employee for 168 hours @ 40¢, or back wages totalling $67.20.

"5. That, Renford Henry performed duties for the employer, Gannet Corp., between August, 1964 and February, 1965 characterized as those of a carpenter; that, the prevailing rate for carpenters is $1.75 per hour, that, employee worked a total of 927½ regular hours @ $1.60 per hour; that the employer failed, in this instance, to pay the prevailing rate for carpenters; consequently, is liable to employee for 927½ hours @ 15¢, or back wages totalling $139.13.

"6. That, James Athill performed duties for the employer, Gannet Corp., between August, 1964 and February, 1965 characterized as those of a carpenter; that, employee worked 224 regular hours @ $1.30 per hour; 222 regular hours and 24 overtime hours at the rate of $1.35 per hour and 375 regular hours at $1.50 per hour; that the employer failed, in this instance, to pay the prevailing rate for carpenters; accordingly, is liable to employee for 224 hours @ 45¢, or $100.80; 222 regular hours @ 40¢ and 24 O.T. hours @ 60¢, or $103.20, and 375 regular hours @ 25¢ or $93.75, a total of $297.75"

The appellant was directed to pay to Gaskin, Henry and Athill back wages in accordance with the findings of fact. This appeal, docketed at Civil No. 38-1965, followed.

The other complaint was filed by Stedman Weston and charged that the appellant had failed to supply Weston with a 40 hour workweek but that he had worked only one or two days out of each week. After a hearing, the Director of Labor, on March 15, 1965, issued Order 1-1965, in which he made the following findings of fact:

"1. That, Stedman Weston is a nonresident and was employed by Gannet Corporation as a mason at the rate of $1.75 per hour, under bond, in the month of October, 1964, up to and including January 14, 1965.

"2. That, Gannet Corporation signed an agreement with the Commissioner of Agriculture & Labor guaranteeing a 40 hour work-week to its employees.

"3. That employer's payroll shows work-weeks of less than 40 hours as follows:

| | |
|---|---|
| October 29, 1964 | 24 hrs. |
| November 12, 1964 | 35 " |
| November 25, 1964 | 32 " |
| December 3, 1964 | 39½ " |
| December 10, 1964 | 8 " |
| December 24, 1964 | 8 " |
| December 31, 1964 | 0 " |
| January 2, 1965 | 8 " |
| January 14, 1965 | 15½ " |

"4. That employer made 40 hours of employment available to the employee for the week ending October 29, 1964 but that employee did not avail himself of the opportunity to work; accordingly, employer should not be held liable for this work-week.

"5. That, the employer, Gannet Corporation, failed to supply the employee, Stedman Weston, with full time employment for the remaining weeks as listed in paragraph 3, hereof, a total of 174 hours, for which employer should be held liable."

The appellant was ordered to pay Weston the sum of $304.50, representing 174 hours of employment at $1.75

per hour. From this order the appellant appealed at Civil No. 39-1965.

No issues of fact are raised on these appeals; the issues being solely questions of law. The principal issue is whether the statute involved is valid. The appellant contends that the Act of February 25, 1964, No. 1102, V.I. Sess. L. 1964, p. 41, as amended, 24 V.I.C. § 125 et seq., under which the orders here under review were issued, is invalid in that (1) Congress has fully legislated with respect to importing alien nonresident workers to the exclusion of territorial legislation such as this, and (2) that the statute fails to give equal protection of the laws and is discriminatory. The issue is also raised that Order 2-1965 is invalid because of the alleged failure of the Commissioner to promulgate detailed standards of qualifications for occupational categories.

We turn first to the appellant's contention that Congress, having legislated with respect to importing alien nonresident workers, the Act of February 25, 1964, No. 1102, as amended, 24 V.I.C. § 125 et seq., is invalid on the ground that it conflicts with the federal law on the same subject. This the Government of the Virgin Islands denies, asserting not only that the Virgin Islands statute does not conflict with the federal legislation but also, affirmatively, that the Virgin Islands Legislature acted well within its power in regulating the employment of nonresident alien workers in order to protect its resident workers. In support of its position the Government relies on Day-Brite Lighting, Inc. v. Missouri, 1952, 342 U.S. 421, 423, in which the Supreme Court said that "the state legislatures have constitutional authority to experiment with new techniques; they are entitled to their own standard of the public welfare; they may within extremely broad limits control practices in the business-labor field, so long as specific constitu-

tional prohibitions are not violated and so long as conflicts with valid and controlling federal laws are avoided."

It is clear that if a law passed by a State in the exercise of its authorized powers comes into conflict with federal law, the State law must yield. Smith v. Alabama, 1888, 124 U.S. 465, 473; Second Employers' Liability Cases, 1912, 223 U.S. 1; Sperry v. Florida, 1963, 373 U.S. 379, 384. But the Supreme Court has long established the rule that "It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the States, even when it may do so, unless its purpose to effect that result is clearly manifested. This court has said—and the principle has been often reaffirmed —that 'in the application of this principle of supremacy of an act of Congress in a case where the State law is but the exercise of a reserved power, the repugnance or conflict should be direct and positive, so that the two acts could not be reconciled or consistently stand together.' Sinnott v. Davenport, 22 How. 227, 243." Reid v. Colorado, 1902, 187 U.S. 137, 148. See, also, Kelly v. Washington, 1937, 302 U.S. 1. "Statements concerning the 'exclusive jurisdiction' of Congress beg the only controversial question: whether Congress intended to make its jurisdiction exclusive," California v. Zook, 1949, 336 U.S. 725, 731. Thus, each case must be decided on its own particular facts. Head v. New Mexico Board, 1963, 374 U.S. 424, 429–430. "The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives." Florida Avocado Growers v. Paul, 1963, 373 U.S. 132, 142.

Accordingly, the question for decision on this point is whether the statute here under consideration is, within the meaning of section 8(a) of the Revised Organic Act

of 1954, as amended, a rightful subject of legislation not inconsistent with the Revised Organic Act or the laws of the United States made applicable to the Virgin Islands. 48 U.S.C.A. § 1574(a). The Court of Appeals had occasion to point out in Virgo Corporation v. Paiewonsky, 3 Cir. 1967, 6 V.I. 256, 384 F.2d 569, 578–579, that under the language of this section Congress intended that the legislative jurisdiction of the Territory of the Virgin Islands should cover the ordinary area of sovereign legislative power, limited and circumscribed only by the Revised Organic Act and the laws of the United States made applicable to the Virgin Islands, and subject to the power of Congress to annul any Act of the Territorial Legislature. 48 U.S.C.A. § 1574 (c).

The Immigration and Nationality Act of 1952, 66 Stat. 163, provides for various classes of nonimmigrant aliens to come temporarily to the United States,[2] which so far as pertinent here, include the following aliens:

"(H) an alien having a residence in a foreign country which he has no intention of abandoning . . . (ii) who is coming temporarily to the United States to perform other temporary services or labor, if employed persons capable of performing such service or labor cannot be found in this country. . . ." Sec. 101 (a) (15) (H) (ii), 8 U.S.C.A. § 1101 (a) (15) (H) (ii).

Section 214 of the Act, 8 U.S.C.A. § 1184, provides for the admission of such nonimmigrants. The Attorney General is authorized to promulgate regulations and "The question of importing any alien as a nonimmigrant under section 101(a) (15) (H) in any specific case or specific cases shall be determined by the Attorney General, after consultation with appropriate agencies of the Government, upon petition of the importing employer. Such petition shall be made and approved before the visa is granted. The petition

---

[2] The term "United States" as here used includes the Virgin Islands. 8 U.S.C.A. § 1101(a)(38).

shall be in such form and contain such information as the Attorney General shall prescribe." Sec. 214(c), 8 U.S.C.A. § 1184(c). Thus, when resident individuals to perform a particular service or labor cannot be found in the United States, or when unique or special needs arise in the labor market which cannot be fulfilled by the domestic labor force, a petition may be filed by an employer asking for the entrance, on a temporary basis, of section 101(a)(15)(H)(ii) nonimmigrants who can perform these special tasks or labor.

The regulations promulgated by the Attorney General under Section 214(a) of the Immigration and Nationality Act name the Secretary of Labor or his designated representative as the agency to be consulted by the Immigration and Naturalization Service with respect to the importation of section 101(a)(15)(H)(ii) nonimmigrants.[3] Under a series of orders by the Secretary of Labor and his subordinates[4] this function was lodged in the United States Employment Service. Accordingly the importing employer is required under the regulations to file with his petition as a supporting document either a certification from the Employment Service stating that qualified workers cannot be found in the United States, and that the employment of the nonimmigrant will not adversely affect the wages and working conditions of workers in the United States similarly employed, or a notice that such a certification cannot be made. In the latter event the petitioner may present countervailing evidence that qualified persons in the United States are not available and that the employment policies of the Department of Labor have been observed, together with a detailed description of the situation which makes

[3] Immigration Regulations, § 214.2(h)(2)(ii), 8 C.F.R. (Rev. Jan. 1, 1967) p. 43.
[4] General Order 69 (Revised) of the Secretary of Labor, May 13, 1960, 25 F.R. 4484; Order of Assistant Secretary of, Labor for Employment and Manpower, August 19, 1960, 25 F.R. 8760; Order of Director, Bureau of Employment Security, August 19, 1960, 25 F.R. 8760.

the importation of the temporary workers necessary and a statement whether the need is temporary or seasonal and whether it is expected to recur.[5]

■ The United States Employment Service of the Department of Labor, the agency to which has been delegated the duty of issuing a certificate upon petition of an importing employer, was created by Congress to promote and develop a system of public employment offices in the several States for persons legally qualified to engage in gainful occupations and to maintain, inter alia, a system for clearing labor between the several States. Act of June 6, 1933, 48 Stat. 113, 29 U.S.C.A. § 49 et seq. In order to obtain the benefits of appropriations by Congress for this purpose, State legislatures were required to designate or create State agencies vested with all powers necessary to cooperate with the United States Employment Service under the Act and to comply with rules and regulations promulgated by the Secretary of Labor to carry out the purposes of the Act. Following the amendment of the 1933 Act by the Act of September 8, 1950, 64 Stat. 882, to include the Virgin Islands, the Municipal Councils of the Virgin Islands in 1951 accepted the benefits of the Act of 1933 and created the Virgin Islands Employment Service as an affiliate of the United States Employment Service, requiring it to cooperate with all authorities of the United States having duties under the 1933 Act and to act in accordance with all rules and regulations issued thereunder. Ordinances of the Municipal Councils of St. Thomas and St. John and of St. Croix, approved March 1, 1951, as amended, 24 V.I.C. § 151 et seq.

■ This brings us to the Virgin Islands statute here under attack. By the Act of October 30, 1961, No. 791,

---

[5] Immigration Regulations, § 214.2(h), 8 C.F.R. (Rev. Jan. 1, 1967) p. 42 et seq.

§§ 3 and 4 V.I.Sess.L. 1961, p. 239–240, the Legislature added a new section 21 to the Virgin Islands Fair Labor Standards Act, 24 V.I.C. § 1 et seq., providing therein that preference should be given, in occupations and industries of the Virgin Islands, to resident workers, and adding a new section 161 to the Virgin Islands Employment Service Act, 24 V.I.C. § 151 et seq., relating to the importation of alien nonresident workers. These two sections read as follows:

"21. The Commissioner [of Labor] shall aid and assist resident workers in the Virgin Islands to obtain, safeguard and protect their rightful preference to be employed in occupations and industries in the Territory. He shall have the power to issue rules and regulations, which when approved by the Governor, shall have the force and effect of law to effectuate the policy contained herein." 24 V.I.C. § 21.

"161. (a) An employer who desires to import alien workers for employment shall first notify the Virgin Islands Employment Service as to the unavailability of occupationally qualified residents, the number of alien workers required, and the occupational classification of such workers. The Virgin Islands Employment Service shall thereupon investigate the circumstances and shall cause to be advertised throughout the Virgin Islands, by whatever means it shall determine to be feasible, the existence of the vacancies which the employer desires to fill and the prevailing wage rates for each occupation as determined by the Commissioner of . . . Labor. Upon the expiration of ten days after the first advertisement by the Employment Service, the said Service finding that there are no occupationally qualified resident workers available to fill all or some of the vacancies advertised, shall issue a clearance for the employment of nonresident workers for the vacancies for which no qualified resident workers are available.

(b) The Virgin Islands Employment Service is authorized to require such agreements or conditions as the payment of wages or benefits to nonresident workers as it shall determine to be necessary and consistent with the policy and purposes of this chapter to be executed by the employer; and any such agreement or conditions agreed to by an employer shall be legally enforceable in the courts of the Virgin Islands, upon action taken by an aggrieved employee or on his behalf by the Commissioner of . . . Labor.

(c) The Commissioner of . . . Labor shall, after public notice and hearing, determine the prevailing wage rates for laborers, workmen or other persons in occupations in the Virgin Islands in the occupational categories applicable for the purposes of this section." 24 V.I.C. § 161.

These provisions remain a part of the statutory law of the Virgin Islands. The Act of February 25, 1964 and its subsequent amendments,[6] which the appellant here attacks, serve merely to set out with particularity and precision the procedures to achieve these objectives, and to restate the purpose of the Act,[7] namely, that resident workers shall be given preference in employment and that the employment of nonresident workers shall not cause injurious or adverse effects upon the wages and working conditions of resident workers. To this end the Act of 1964, as amended, provides that nonresident workers shall be employed only to supplement the labor force, that no resident worker shall suffer any reduction in his workweek below 40 hours a week by reason of an employer employing a nonresident worker, 24 V.I.C. § 126, that the Virgin Islands Employment Service and the Commissioner of Labor must cooperate in conducting continuing surveys of manpower needs, preparation of training programs and recommend other measures to alleviate shortages and reduce the need for nonresident workers, 24 V.I.C. § 127, that both the Employment Service and the Commissioner shall be notified by an employer applying for nonresident alien workers, and that the Employment Service has the duty to endeavor to fill the job vacancies from the lists of qualified resident workers registered with it and, if unsuccessful, to publicize widely the existence of these vacancies and the

---

[6] Acts of May 5, 1964, No. 1227, V.I.Sess.L. 1964, p. 332; December 1, 1965, No. 1537, V.I.Sess.L. 1965, p. 530, and April 4, 1966, No. 1670, V.I.Sess.L. 1966, p. 134–137.

[7] Act of February 25, 1964, No. 1102, § 1, V.I.Sess.L. 1964, p. 41.

applicable minimum recruitment wage rates[8] for each occupation, 24 V.I.C. § 128(a) and (b). Before a clearance order for the employment of nonresident workers may be issued to the Immigration and Naturalization Service, the Employment Service must find (1) that there are no occupationally qualified resident workers available to fill all or some of the vacancies applied for and (2) that such employment of nonresident workers will not adversely affect the wages and working conditions of domestic workers similarly employed, and must have received from the Commissioner a favorable recommendation that the employer's application be granted. 24 V.I.C. § 128(c). If subsequently a qualified resident worker becomes available the Employment Service must so notify the Commissioner and the Immigration and Naturalization Service. 24 V.I.C. § 128 (c). The Commissioner is further required to procure from the employer a written agreement stating that:

"(1) the employer requires such nonresident workers for immediate employment, and the clearance of none is sought for the purpose of building a labor reserve; (2) the employer is paying or intends to pay not less than the minimum recruitment wage to all employees in the same or related occupational classification as the nonresident workers; (3) the employer agrees to comply with minimum employment conditions or other pertinent matters consistent with the provisions of this chapter and such other applicable laws as the Commissioner may determine; and (4) such workers are guaranteed a workweek of not less than 40 hours, except that a lesser workweek, not to be less than 20 hours per week, shall be guaranteed nonresident workers in such industries and occupations

---

[8] " 'Minimum recruitment wage' means the wage paid for a particular occupation or skill as determined semiannually by the [wage] board after public notice and hearing. In determining the minimum recruitment wage the board shall take into consideration the average wage paid for a particular occupation or skill by the three employers in the Virgin Islands who maintain the highest wage rates, the wage rates which prevail under union contracts, the ability of employers to pay, the cost-of-living appraisals, such wages rates necessary to induce residents to accept the jobs available, and any other pertinent factors; Provided, however, That the rate set by the board shall not exceed the average paid for an occupation or skill by the three employers who maintain the highest wage rates. . . ." 24 V.I.C. § 125.

as the board, under the provisions of section 6(e) of this title, may determine to be in reasonable need of such lesser workweek guarantee, except, further, that any employer who has a bona fide labor union contract, as determined by the Commissioner, under which the employer's workers are guaranteed full employment and such other benefits as the Commissioner may deem satisfactory shall not be required to guarantee any minimum workweek under the provisions of this clause." 24 V.I.C. § 128(d).

Section 129 spells out the procedure for the replacement of nonresident alien workers when occupationally qualified resident workers become available. Subsection (d) of that section contains the prohibition that "No employer shall reduce the regular workday or workweek of resident workers for the purpose of giving employment to nonresident workers." And finally section 137 provides that nothing in the Act shall "be construed as abrogating or interfering with the responsibility of the Employment Service to carry out rules and regulations promulgated by the United States Secretary of Labor for operation of affiliates of the United States Employment Service."

It will thus be seen that the Virgin Islands Act of 1961 and the Act of 1964 and its amendments, which supplemented the 1961 law, were designed to provide the procedure for the performance of the duty delegated to the United States Employment Service, and through it to its affiliate, the Virgin Islands Employment Service, to certify, with respect to nonimmigrants sought to be admitted pursuant to section 214 of the Immigration and Nationality Act of 1952, that unemployed persons capable of performing such services or labor cannot be found in the Virgin Islands and that such employment will not adversely affect the wages and working conditions of workers in the Virgin Islands similarly employed. Immigration Regulations, § 214.2(h)(2)(ii), 8 C.F.R. (Rev. Jan. 1, 1967) p. 43. The concurrent cooperation required of the Commissioner of Labor of the Virgin Islands is in furtherance of the carry-

ing out of these policies and not in conflict with the federal law. For the Congressional policy is that American labor be protected and that temporary workers be admitted only when it tends to serve the national economy, the cultural interests, and the welfare of the United States, by facilitating the entry for temporary residence of aliens whose specialized experience or exceptional ability would best serve the American needs. Besterman, Commentary on the Immigration and Nationality Act, 8 U.S.C.A. p. 42–43; H. Rept. 1365, 82d Cong. 2d Sess., 2 U.S. Code Cong. & Admin. News, 1952, p. 1705. Therefore, the requirement that the Virgin Islands Commissioner of Labor make a favorable recommendation on the importing employer's application is an additional safeguard that admission of such a nonimmigrant worker is in the public interest and that requirement is not in conflict or inconsistent with the controlling federal law. Futhermore, the certificate issued by the Virgin Islands Employment Service to the Immigration and Naturalization Service is merely a supporting document which the importing employer is required to file with his petition. Immigration Regulations, § 214.2(h), 8 C.F.R. (Rev. Jan. 1, 1967) p. 42 et seq. If the Employment Service finds that a favorable certification cannot be made, or if the immigration authorities reject the petition, the federal law provides means of review quite independent of the Virgin Islands legislation. See, for example, Hess. v. Esperdy, D.C.N.Y. 1964, 234 F.Supp. 909.

 Accordingly, we conclude that the Virgin Islands Act of February 25, 1964, No. 1102, 24 V.I.C. § 125 et seq., as amended, does not conflict with the Immigration and Nationality Act or the Rules and Regulations promulgated thereunder.

 The appellant next contends that the Act of February 25, 1964, as amended, is invalid in that it violates the equal protection clause of the Revised Organic Act,

48 U.S.C.A. § 1561, and hence the orders issued thereunder are void. In this regard appellant's first argument is that the Act discriminates against a nonresident alien worker because he must be replaced when a resident worker becomes available. 24 V.I.C. § 129. The short answer to this contention is that this is the Congressional mandate. A nonimmigrant may be admitted "temporarily to the United States to perform other temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country." 8 U.S.C.A. § 1101 (a) (15) (H) (ii). See Government v. Caneel Bay Plantation, M.C.V.I. 1966, 5 V.I. 655. The authority to control immigration—to admit or exclude aliens—is vested solely in the Federal Government. Truax v. Raich, 1915, 239 U.S. 33, 41. The condition under which a nonimmigrant is permitted to enter is that he may remain only temporarily, until the time when an unemployed resident worker[9] capable of performing such services or labor becomes available. The rule expressed in Truax v. Raich, that all residents, citizens and aliens alike, must be given equal opportunity for employment, is inapplicable in the case of a nonimmigrant admitted solely for the purpose of temporarily performing services or labor.

 The appellant also argues that the Act discriminates against resident workers in that nonresident alien workers are guaranteed a 40 hour workweek and are assured higher minimum wages. With this contention also we cannot agree. Insofar as the resident and nonresident workers employed by the same employer are concerned, when an employer undertakes to employ foreign labor he

---

[9] " 'Nonresident worker' means any person who is capable of performing services or labor and who is a nonimmigrant alien admitted to the United States under the provisions of section 101(a)(15)(H)(ii) . . . . "

" 'Resident worker' means any person who is capable of performing services or labor and who is a citizen of the United States or an immigrant alien admitted to the United States for permanent residence under the provisions of the Immigration and Nationality Act. . . ." 24 V.I.C. § 125.

328

agrees to treat on an equal basis all employees in the same or related occupational classification. The petitioning employer agrees to pay not less than the minimum recruitment wage to all employees in the same or related occupational classification as the nonresident worker, 24 V.I.C. § 128(d), and that the resident worker will not suffer any reduction in his workweek below 40 hours a week by reason of any employer employing a nonresident worker. 24 V.I.C. §§ 126, 129(d). Accordingly, it will be seen that the Act contemplates that all employees in the same occupational classification will receive equal treatment from the same employer.

 ██ It is suggested that the Act discriminates in favor of workers employed by an employer who has imported foreign workers against workers employed by employers who do not import foreign workers. It is well settled, however, that equal protection of the law does not impose rigid rules of equality. Port Construction Co. v. Government of the Virgin Islands, 3 Cir. 1966, 5 V.I. 549, 558–559, 359 F.2d 663, 667–668. There is a rational basis for guaranteeing a temporary nonimmigrant a wage based, inter alia, on the average wage paid by the three highest paying employers for the same category and guaranteeing that worker a full workweek. For he is not free, as is a resident worker, to change his employment. Resident workers are free to come and go at will, to work for whomsoever they choose, and they are free to bargain for and to accept wage rates from their employers. No resident worker has come forward to assert that the Act discriminates against him. We cannot say as a matter of law that the Act offends the equal protection clause.

We conclude, therefore, that the Act of February 25, 1964, No. 1102, as amended, 24 V.I.C. § 125 et seq., is a rightful subject of legislation and is not inconsistent with

the Organic Act or the laws of the United States made applicable to the Virgin Islands.

■ The appellant finally contends that Order No. 2-1965, under review at Civil No. 38-1965, is void because the Commissioner of Agriculture and Labor had failed to prescribe standards of qualifications for occupational categories. Section 131, Title 24, V.I.C., provides, in pertinent part, that "The Commissioner shall have the power to establish minimum standards of qualifications for occupation categories to which the prevailing wage rates apply."

■ ■ The appellant had classified Gaskin's work as that of a laborer and he was paid at the rate of $1.10 per hour. Gaskin's work was to prepare surfaces which were painted by others. The Director of Labor concluded that Gaskin performed duties which he classified as those of a painter and that Gaskin should have been paid, pursuant to Wage Order No. 7, at the rate of $1.50 per hour. The appellant says it had classified Renford Henry and James Athill as carpenter helpers and that they had been properly paid. Henry was paid at the rate of $1.60 per hour and Athill was paid at the rates of $1.30 to $1.50 per hour. The Director, however, found that they had performed the duties of carpenters and that they were entitled to wages at $1.75 per hour, the rate established under Wage Order No. 7 for carpenters.

The appellant does not dispute these findings of fact but on this appeal contends that, as a matter of law, the Commissioner was required to establish minimum standards of qualifications for occupational categories and that no such standards had been set up to guide the Commissioner or his designated agent in determining when an employee was to be classified as a laborer, a painter or a carpenter.

It requires no discussion to accept the proposition that classifications must be based upon reason and may not be

arbitrary. However, a classification having a reasonable basis may not be held invalid "merely because it is not made with mathematical nicety, or because in practice it results in some inequality." Lindsley v. Natural Carbonic Gas Co., 1911, 220 U.S. 61, 78–79. The power to classify authorizes the exercise of a wide discretion according to general, rather than minute, distinctions, and what is done is condemned only when it is without any reasonable basis and, therefore, is purely arbitrary. Second Employers' Liability Cases, 1912, 223 U.S. 1, 53.

 It is clear, we think, that the Virgin Islands Legislature, in authorizing the Commissioner to establish minimum standards of qualifications for occupational categories, did not require him to enumerate all the duties which an employee within a given category might be called upon to perform. The Commissioner, in Wage Order No. 7, set out the occupations involved in various industries and the prevailing wage rates to be paid in each classification. In so doing he used well known and commonly accepted classifications such as carpenters, carpenter helpers, painters and construction laborers. We cannot say, as a matter of law, that the Commissioner was required by general regulation to set out in detail the difference in the duties to be performed by laborers, painters, carpenters and carpenter helpers.

We conclude that Order 2-1965 was not invalid for the reasons asserted by the appellant. Since, as we have held, the statutes under which that order and Order 1-1965 were issued are valid enactments and since the Commissioner's findings of fact support the orders they must both be affirmed.

Judgments will accordingly be entered affirming the orders of the Commissioner of Agriculture and Labor which are the subject of these appeals.