ALFRED ROGERS and RUPERT LESPEARE, Individually and On Behalf of All Other Persons Similarly Situated, Plaintiffs

v.

JEAN D. LARSEN, Individually and as Acting Commissioner of Labor of the Virgin Islands of the United States, EDWARD H. LEVI, Individually and as Attorney General of the United States, LEONARD F. CHAPMAN, JR., Individually and as Immigration Commissioner of the United States, JAMES ST. JOHN, JR., Individually and as Director of Alien Certification Office, Defendants

Civil No. 75-169

District Court of the Virgin Islands

Div. of St. Thomas and St. John

February 20, 1976

CHRISTIAN, *Chief Judge*

### MEMORANDUM OPINION

This action was commenced on March 14, 1975, when plaintiffs Alfred Rogers and Rupert Lespeare, nonimmigrant aliens present in the Virgin Islands pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii), filed suit for mandatory,

declaratory and injunctive relief. Specifically, inter alia, they sought a declaration that 24 V.I.C., Chapter 6 and the amendments thereto—but primarily 24 V.I.C. § 129, is unconstitutional as in conflict with the Fifth and Fourteenth Amendments to the United States Constitution, and contrary to the Revised Organic Act, 48 U.S.C. § 140g, as amended. They also sought to enjoin the application of 24 V.I.C., Chapter 6 to themselves and others similarly situated and to mandate that the defendants cease to enforce 24 V.I.C., Chapter 6 against them. Plaintiffs further sought a declaration that Provision 8 in Form 1-320B, the required agreement between employers and the Immigration and Naturalization Service for the hiring of nonimmigrant alien labor, is "null, void and unenforceable," and an injunction from enforcing Provision 8 against plaintiffs. Finally, plaintiffs sought to enjoin enforcement of 8 U.S.C. § 1251 and the regulations thereunder, against them and others similarly situated.

On April 24, 1975, Defendant Jean Larsen, Acting Commissioner of Labor of the Virgin Islands, filed an answer denying, inter alia, that the above-mentioned statutes and provisions were unconstitutional as applied, or that plaintiff Rogers had been terminated from employment pursuant to 24 V.I.C. § 129.

On May 9, 1975, a hearing was held on plaintiffs' motion for a preliminary injunction. No decision on the matter was rendered, since it was determined that an evidentiary hearing should be held. Such hearing was set for June 5, 1975. The Court also deferred decision on plaintiffs' motion to certify the suit as a class action.

On May 23, 1975, defendants, Attorney General of the United States, Commissioner of Immigration and Naturalization and Director of the Virgin Islands Alien Certification Office (hereinafter, the Federal Defendants), moved for an order dismissing the action as to them on the ground

of lack of jurisdiction of the District Court "over any matters herein pertaining to the immigration laws, the only one in which they are involved". Basically, the Federal Defendants argued that the plaintiffs had yet to exhaust their administrative remedies, that certain decisions on the part of the immigration officials were discretionary and hence unappealable, and that the Court of Appeals, rather than the District Court, has jurisdiction over pending deportation proceedings.

Also on May 23, 1975, defendant Jean Larsen filed a motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that Plaintiffs lacked standing to prosecute the cause. Defendant Larsen submitted affidavits with the motion tending to show that plaintiffs were dismissed from their employment due to completion of their employer's "only major construction job and to a shortage of materials", and not to application of section 129. The affidavits further tended to show that Rogers' appeal from a decision of the Immigration and Naturalization Service granting him voluntary departure was presently pending, and that Lespeare's immigration status was secure since he had found another job and had been re-certified to remain in the territory.

On June 4, 1975, the United States Attorney filed a motion to quash a subpoena duces tecum which had been served upon Dante Rossi, officer in charge of the Immigration and Naturalization Service for the Virgin Islands and James St. John, Jr., Director of the Virgin Islands Alien Certification Office. Also on the same date, counsel for plaintiffs submitted a motion to intervene on behalf of two nonimmigrant aliens, Casper Ephraim and Rafael Lockhart. The motion was supported by affidavits from each of these persons stating that they were fired from their jobs because their employers had been told to do so by the Vir-

gin Islands Department of Labor in order that they could be replaced by citizens or permanent residents.

On June 5, 1975, an evidentiary hearing was held to determine whether a preliminary injunction should issue. At that hearing, this Court denied the motion to quash submitted by the United States Attorney. The Court dropped plaintiff Lespeare as a party because the testimony adduced at the hearing satisfied the Court that he had not been fired pursuant to any application of section 129. The Court took under advisement the question whether plaintiff Rogers should be dropped as a party. The motion of Casper Ephraim to intervene as a party plaintiff was heard and denied. The motion of Rafael Lockhart to intervene as a party plaintiff was heard and granted. The motion to dismiss the entire matter on the ground that plaintiffs had no standing to sue was denied for the reason that Rafael Lockhart was found to have standing.

After the hearing, this Court entered an order directing that Alfred Rogers be dropped as a party for the reason that he had not been terminated from his employment pursuant to section 129.

■ At this juncture, the initial question for determination is whether the case against the Federal Defendants should be dismissed. I conclude that the question must be answered in the affirmative for the following reason: The only plaintiff remaining in this suit is Rafael Lockhart. His affidavit, dated May 22, 1975, states that he was employed by Litwin Corporation on St. Croix until April 18, 1975. At that time, he was terminated

for the reason that he is a non-resident worker as defined in Title 24, Chapter 6 of the Virgin Islands Code and as is more particularly stated in the letter of termination received from Litwin Corporation . . .

*Id.* The letter to Lockhart from the Litwin Corporation, dated April 5, 1975, and signed by J. E. Rhorer, Project Superintendent, read as follows:

> Pursuant to Title 24, Chapter 6 of the Virgin Islands Labor Code, the Litwin Corporation is required to replace Non-Resident workers with qualified Resident Workers. We are hereby advising you that your position will be filled by a U.S. Citizen/Permanent Resident, and, in accordance with the Virgin Islands law, we are giving you fourteen (14) days notice of termination. Your last day of employment on this job will be April 18, 1975.

Neither Lockhart's affidavit nor any other material submitted to this Court presently alleges or otherwise demonstrates that, once Lockhart was dismissed, he became subject to deportation proceedings. His sole allegation is that he was dismissed from his job pursuant to section 129. This being the case, he has not stated a claim against any of the Federal Defendants, and, accordingly, the suit against them must be dismissed. In reaching this decision I need not consider the complex arguments raised in the brief submitted in support of the Federal Defendants' motion to dismiss. Indeed, this decision should not be considered as reflecting upon the merits of those arguments.

■ Presumably, in light of the foregoing, a second evidentiary hearing could be held to determine whether the allegations contained in the affidavit of Rafael Lockhart are true, and then, whether an injunction should issue. However, I have concluded that such a hearing would serve no purpose. Both sides have thoroughly briefed the legal issues pertaining to 24 V.I.C. § 129, and I am ready to hold, as a matter of law: 1) that this statute is not unconstitutional on its face or as applied, and 2) that Provision 8 of Form 1-320B is lawful. Therefore, even if Lockhart's allegations are true, he has stated no claim against the remaining defendant Jean Larsen, and the complaint must be dismissed.

My reason for arriving at the above-stated conclusion is a simple one: the issue of the constitutionality of 24 V.I.C. § 129 was already decided in Gannet Corporation v. Stevens, 282 F.Supp. 437 (D.V.I. 1968). The principal question before Judge Maris in that case was whether 24 V.I.C. § 125 et seq. was

invalid in that (1) Congress has fully legislated with respect to importing alien non-resident workers to the exclusion of territorial legislation such as this, and (2) that the statute fails to give equal protection of the laws and is discriminatory.

Id. at 440. These are precisely the major contentions raised in the complaint in the instant case.

Judge Maris reached the following conclusion concerning the preemption question:

... the Act of 1964 and its amendments (24 V.I.C. § 125 et seq.) ... were designed to provide the procedure for the performance of the duty delegated to the United States Employment Service, and through to its affiliate, the Virgin Islands Employment Service, to certify, with respect to nonimmigrants sought to be admitted pursuant to section 214 of the Immigration and Nationality Act of 1952, that unemployed persons capable of performing such services or labor cannot be found in the Virgin Islands and that such employment will not adversely affect the wages and working conditions of workers in the Virgin Islands similarly employed. Immigration Regulations, § 214.2(h)(2)(ii), 8 CFR (Rev. Jan. 1, 1967) p. 43. The concurrent cooperation required of the Commissioner of Labor of the Virgin Islands is in furtherance of the carrying out of these policies and not in conflict with the federal law. For the Congressional policy is that American labor be protected and that temporary workers be admitted only when it tends to serve the national economy, the cultural interests, and the welfare of the United States, by facilitating the entry for temporary residence of aliens whose specialized experience or exceptional ability would best serve the American needs. Besterman, Commentary on the Immigration and Nationality Act, 8 U.S.C.A. pp. 42–43; H. Rept. 1365, 82nd Cong. 2d Sess., 2 U.S. Code Cong. & Admin. News, 1952, p. 1705. Therefore, the requirement that the Virgin Islands Commissioner of Labor make a favorable recommendation on the importing employer's application is an additional safeguard that admission of such a

nonimmigrant worker is in the public interest and that requirement is not in conflict or inconsistent with the controlling federal law. Furthermore, the certificate issued by the Virgin Islands Employment Service to the Immigration and Naturalization Service is merely a supporting document which the importing employer is required to file with his petition. Immigration Regulations, § 214.2(h), 8 CFR (Rev. Jan. 1, 1967) pp. 42 et seq. If the Employment Service finds that a favorable certification cannot be made, or if the immigration authorities reject the petition, the federal law provides means of review independent of the Virgin Islands legislation. See, for example, Hess v. Esperdy, D.C.N.Y. 1964, 234 F.Supp. 909.

Accordingly, we conclude that the Virgin Islands Act of February 25, 1964, No. 1102, 24 V.I.C. § 125 et seq., as amended, does not conflict with the Immigration and Nationality Act or the rules and regulations promulgated thereunder.

## As for the equal protection question, Judge Maris stated:

The Appellant next contends that the Act of February 25, 1964, as amended, is invalid in that it violates the equal protection clause of the Revised Organic Act, 48 U.S.C.A. § 1561, and hence the orders issued thereunder are void. In this regard appellant's first argument is that the Act discriminates against a non-resident alien worker because he must be replaced when a resident worker becomes available. 24 V.I.C. § 129. The short answer to this contention is that this is the Congressional mandate. A nonimmigrant may be admitted "temporarily to the United States to perform other temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country". 8 U.S.C.A. § 1101 (a)(15)(H)(ii). See Government of the Virgin Islands v. Caneel Bay Plantation, M.C.V.I. 1966, 5 V.I. 655. The authority to control immigration—to admit or exclude aliens—is vested solely in the Federal Government. Truax v. Raich, 1915, 239 U.S. 33, 41 . . . The condition under which a nonimmigrant is permitted to enter is that he may remain only temporarily, until the time when an unemployed resident worker capable of performing such services or labor becomes available. The rule expressed in Truax v. Raich that all residents, citizens and aliens alike must be given equal opportunity for employment, is inapplicable in the case of a nonimmigrant admitted solely for the purpose of temporarily performing services or labor.

Thus, the Court in Gannet was confronted with the precise question whether 24 V.I.C. § 129 was constitutional, and squarely held that it was.

Since 1968, the year Gannet was decided, the Supreme Court has decided two new cases involving the rights of aliens: Sugarman v. Dougal, 413 U.S. 634 (1973), and Graham v. Richardson, 403 U.S. 365 (1970). Counsel for plaintiffs has made much of the results reached in those cases, and asserts that the outcome in Gannet, in light of Sugarman and Graham, would be different were that case to be decided today. I am of the opinion, however, that Sugarman and Graham are merely extensions of earlier Supreme Court decisions, viz., Takahasi v. Fish and Game Commission, 334 U.S. 410 (1948) and Truax v. Raich, 239 U.S. 33 (1915), which were considered and rejected in Gannet as not controlling. All of these cases upheld the rights of aliens (parenthetically, resident aliens rather than nonimmigrants), by striking down discriminatory classifications based on alienage. (The District Court of the Virgin Islands has followed the lead of the Supreme Court in the area of aliens' rights. It has repeatedly refused to deny to all aliens, immigrant and nonimmigrant alike, public benefits, opportunities or services from which they were excluded simply on the basis of their status as aliens. See Sailer v. Tonkin, 356 F.Supp. 72 (D.V.I. 1973); Williams v. Williams, 328 F.Supp. 1380 (D.V.I. 1970); Hosier v. Evans, 314 F.Supp. 316 (D.V.I. 1970)). None of these cases concerned challenges to statutes based on the specific conditions of aliens' privilege to remain in the United States. None of these cases concerned challenges to state statutes echoing, supporting and implementing their federal models. I conclude that Sugarman and Graham do not call into question the viability of Gannet, which must be considered as controlling here.

Plaintiffs' counsel makes much of the fact that the Vir-

gin Islands Employment Service (hereinafter, VIES) is no longer the "designated representative" of the United States Secretary of Labor. Counsel concludes from this fact that the post-Gannet decision to assign to the Manpower Administration the authority to deal with the certification of bonded aliens pursuant to 8 C.F.R. § 214.2(3) indicates a recent Congressional intent to pre-empt the area, thereby making section 129 an impermissible encroachment on federal power. The distinction counsel attempts to draw—between section 129 when VIES was the designated representative and section 129 now that the Manpower Administration is the designated representative—is a "distinction without a difference". The determination to substitute the Manpower Administration for VIES was a decision of the Secretary of Labor, i.e., an executive, discretionary determination. Manifestly, such a decision does not have the retroactive effect of altering Congressional intent or purpose with regard to the effectuation of its laws by a local body.

Counsel for plaintiffs asserts that even if VIES had given some additional authority to assist the Manpower Administration with regard to the admission of nonimmigrant alien labor, such authority would not constitute permission to enforce Title 24, Chapter 6. I certainly agree that the designated representative only has authority with regard to the original certification of nonimmigrant aliens, and that VIES, no longer the designated representative, cannot now be involved in the initial certification.

When Gannet was decided, however, VIES had worn two hats: it had not only served as the designated representative, it had aided in the enforcement of section 129 and the effectuation of 8 U.S.C. § 1101(a)(15)(H)(ii). Simply because VIES has now been relieved of its direct duty to the United States Secretary of Labor with regard to initial certification of aliens does not mean that it can-

not continue to perform its post-certification function pursuant to section 129—i.e., to ensure that the legal condition of the nonimmigrant aliens' admission to the territory, namely "that unemployed persons capable of performing (the nonimmigrant alien's proposed job) cannot be found in this country", continues to exist. The Gannet decision found that such a function was permissible. I see no reason why this function should not also be deemed permissible today.

I seriously doubt that the Congress ever intended that, once an alien was granted entrance to the Virgin Islands on the ground that there was a need for his services and that no residents or citizens were able or willing to perform those services, such grant could never be reviewed or revoked upon a change in the economic situation. Indeed, for the purpose of § 1101(a)(15)(H)(ii) to be adequately fulfilled, the labor market must be constantly reexamined so that the needs of employers and citizens or residents may be constantly met—either with an ebb or a flow of nonimmigrant labor from or to this country. This continuing review of the labor situation is a function which VIES, pursuant to section 129, presently performs. Such a function cannot be considered an encroachment upon federal control of the area of nonimmigrant alien certification.

■ One additional comment to counsel's arguments seem appropriate here before closing.[1] Since this is a territory rather than a sovereign state, Congress need not turn to the courts if it believes a local law encroaches upon its undisputed, supreme power with regard to immigration matters. Congress may simply, pursuant to section 8(c) of

---

[1] Plaintiffs' argument concerning the "60-day Rule", i.e., the policy of the Manpower Administration not to re-certify nonimmigrant aliens who have not found new employment within 60 days of dismissal from previous employment, does not merit textual consideration. The 60-day limitation period is a grace period which only benefits nonimmigrant aliens—who would otherwise be immediately deportable upon losing their jobs.

the Revised Organic Act of 1954, annul any territorial law it decides is impinging upon its authority. Since Gannet was decided, Congress has not taken any action that would in any way demonstrate its belief that 24 V.I.C., Chapter 6, trespasses upon its power. Indeed, the United States Attorney and officials of the immigration and Naturalization Service have stated to this Court that the local statute does not conflict with federal law. I consider these facts strong indication that section 129 passes constitutional muster.

For all the foregoing reasons, therefore, the request for preliminary injunction by the remaining plaintiff must be denied, and the complaint dismissed for failure to state a claim upon which relief can be granted.