563 F.2d 617
 Alfred ROGERS, and Rupert Lespeare, Individually and on
behalf of all other persons similarly situated
v.
Jean D. LARSON, Individually and as the Acting Commissioner
of Labor of the Virgin Islands of the United States, Edward
H. Levi, Individually and as Attorney General of the United
States, Leonard Chapman, Jr., Individually, and as
Immigration Commissioner of the United States, James St.
John, Jr., Individually and as Director of the Alien
Certification Office, Alfred Rogers, Rupert Lespeare, and
Rafael Lockhart, Appellants.
 No. 76-1926.
 United States Court of Appeals,
Third Circuit.
 Argued April 26, 1977.
Decided Sept. 23, 1977.
 
 Thomas A. Elliot, Legal Services of the Virgin Islands, Christiansted, St. Croix, for appellant Rafael Lockhart.
 Edgar D. Ross, Atty. Gen. of the Virgin Islands, Roderick Lawrence, Asst. Atty. Gen. of the Virgin Islands, Charlotte Amalie, St. Thomas, V. I., for appellee Jean D. Larson.
 Philip Wilens, Chief, Government Regulations and Labor Section, Criminal Division, James P. Morris and George W. Masterton, Attys., U. S. Dept. of Justice, Washington, D. C., and Julio A. Brady, U. S. Atty., Charlotte Amalie, St. Thomas, V. I., for the United States of America, amicus curiae.
 OPINION OF THE COURT
 Before WEIS, VAN DUSEN and GARTH, Circuit Judges.
 VAN DUSEN, Circuit Judge.
 
 
 1
 This appeal raises the important question of whether 24 V.I.C. § 129, which provides for the replacement of alien nonimmigrant workers in the Virgin Islands with United States citizens or permanent resident aliens,[1] is (1) preempted under the Supremacy Clause, Art. VI, cl. 2, of the Constitution,[2] by the Immigration and Nationality Act (INA), 66 Stat. 163, as amended, 8 U.S.C. §§ 1101, et seq., or (2) violative of the Equal Protection Clause of the Fourteenth Amendment as applied through section 3 of the Revised Organic Act of the Virgin Islands, 48 U.S.C. § 1561, as amended.[3]
 
 
 2
 The district court denied a request for injunction against enforcement of the Virgin Islands statute and dismissed the complaint, finding neither pre-emption nor equal protection violations. Rogers v. Larsen, 411 F.Supp. 122 (D.V.I.1976). Because we disagree as to pre-emption, the order of the district court will be reversed.[4] Under the view we take of this case, it is unnecessary to reach the issue of equal protection.
 
 I.
 
 3
 Appellant Rafael Lockhart[5] was admitted to the Virgin Islands for temporary employment as a nonimmigrant alien under § 101(a)(15)(H)(ii) of the INA, 8 U.S.C. § 1101(a)(15)(H)(ii),[6] and the regulations promulgated thereunder (8 C.F.R. Ch. 1). Prior to his entry, a determination had been made in accordance with the regulations promulgated under the INA by, or in behalf of, the United States Department of Labor that local workers were not available for the positions which the temporary alien nonimmigrant workers would fill and that the employment of these workers, including Lockhart, would not adversely affect the wages and working conditions of the domestic workers similarly employed. See 8 C.F.R. § 214.2(h)(3).[7] On April 5, 1975, pursuant to notice given by the Virgin Islands Commissioner of Labor under 24 V.I.C. § 129(a), appellant Lockhart's employer, the Litwin Corporation, informed him by letter that his position was to be filled by a United States citizen or permanent resident alien as required by Virgin Islands law and that his employment would terminate in 14 days on April 18, 1975.
 
 II.
 
 4
 The issue before us is whether 24 V.I.C. § 129(a) is pre-empted by the INA and the relevant federal regulations. Although power to regulate immigration is unquestionably exclusively a federal power, regulation of immigration is not per se pre-empted by constitutional power. De Canas v. Bica, 424 U.S. 351, 354-55, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). When the statutes of a state or territory are challenged as void under the Supremacy Clause, "(n)o simple formula can capture the complexities of this determination; the conflicts which may develop between state and federal action are as varied as the fields to which congressional action may apply." Goldstein v. California, 412 U.S. 546, 561, 93 S.Ct. 2303, 2312, 37 L.Ed.2d 163 (1973). The Supreme Court has, however, established three grounds upon which a local statute may be deemed pre-empted by federal law. It will be pre-empted (1) if "Congress has unmistakenly so ordained," or (2) if "the nature of the regulated subject matter permits no other conclusion" but pre-emption, Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963); De Canas v. Bica, supra, 424 U.S. at 356, 96 S.Ct. 933; or (3) if it violates the Supremacy Clause by standing "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[8] Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed.2d 581 (1941); Florida Lime & Avocado Growers, Inc. v. Paul, supra, 373 U.S. at 141, 83 S.Ct. 1210; Goldstein v. California,supra, 412 U.S. at 561, 93 S.Ct. 2303; De Canas v. Bica, supra, 424 U.S. at 363, 96 S.Ct. 933. Our task, then, is to determine if 24 V.I.C. § 129(a) is void because it is pre-empted by the INA under any one of these tests.
 
 
 5
 The meaning of the first test is clear, but before we apply the tests to the facts of this case, we articulate our understanding of the distinction between the second and third tests. We understand the second test to mean that the subject matter of the federal and local laws is such that the two laws or regulatory schemes must inherently either conflict or be duplicative. That is, under this test it is impossible for there to be local regulation in the subject area that does not conflict with or duplicate federal regulation.
 
 
 6
 The third test is applied when there is room in the subject area for both federal and local regulation. This test requires the court to examine both statutory schemes to determine if they can co-exist or if they conflict. De Canas v. Bica, supra at 363, 96 S.Ct. 933.
 
 
 7
 As to the first test, the answer seems clear. As the United States concedes in its amicus brief, nothing in the INA or its legislative history specifically precludes local regulation in this area.[9] Furthermore, appellee does not cite, nor can we find, any legislative history or language in the statute indicating that Congress unmistakably ordained that the INA pre-empts local regulation. Additionally, the Supreme Court has held that in enacting the INA, Congress did not ordain pre-emption of state regulation of the employment of aliens illegally in the country. De Canas v. Bica, supra, 424 U.S. at 356, 96 S.Ct. 933.
 
 
 8
 Regarding the second test, our view is that the nature of the subject matter does not preclude local regulation in this area. We reach this conclusion by relying on Gannet Corporation v. Stevens, 6 V.I. 309, 282 F.Supp. 437 (D.V.I.1968), which illustrates how local and federal law can coexist in this area without duplication or conflict. There, Gannet Corporation appealed from an order by the Commissioner of Agriculture and Labor of the Government of the Virgin Islands, directing it to pay back wages to certain nonresident aliens pursuant to a statutory scheme requiring employers to pay a specified minimum wage to, and provide not less than forty hours of work per week for, nonresident alien workers who had been brought to the territory to supplement the labor force. Gannet argued that the statutes authorizing the Commission to take this action were pre-empted by federal law. Judge Maris thoroughly reviewed the provisions and purposes of both the INA and the challenged Virgin Islands statutory scheme and concluded that the Virgin Islands statutes were not inconsistent with federal law. Gannet, supra, 6 V.I. at 329-30, 282 F.Supp. at 447. Judge Maris' analysis of both statutes demonstrates that the INA leaves room for the states and territories to regulate some aspects of the conditions of employment for nonimmigrant aliens. Therefore, the nature of the subject matter in this case does not preclude local regulation.
 
 
 9
 This view also receives some support from De Canas v. Bica, supra. Although De Canas dealt with a state statute regulating the employment of aliens illegally in this country and the statute challenged in the present case regulates the employment of aliens legally in this country, De Canas nonetheless stands for the general proposition that the subject matter of employment of aliens is not one that permits no other conclusion but that Congress has pre-empted state regulation.
 
 
 10
 We reach the narrow question of whether § 129(a) stands as an obstacle to the execution of the purposes of the INA. For reasons indicated below, we hold that it does.
 
 
 11
 At the outset, we note that neither De Canas v. Bica, supra, relied on by the appellee, nor Gannet Corporation v. Stevens, supra, relied upon by the district court, precludes a determination that § 129(a) stands as an obstacle to execution of the purposes of INA. De Canas held that the challenged California statute was not pre-empted on the grounds already discussed, specific congressional ordination and a subject matter permitting no conclusion but pre-emption. The Court expressly reserved the question of whether the California statute was pre-empted because it stood as an obstacle to the accomplishment of the purposes of Congress, finding the record insufficient to address that injury. De Canas v. Bica, supra, 424 U.S. at 363, 96 S.Ct. 933. Furthermore, De Canas is distinguishable from the present case because, as noted above, De Canas concerned employment of aliens illegally in this country, and the statute challenged here concerns the employment of aliens lawfully in this country.
 
 
 12
 Although the language used by Judge Maris in Gannet differs somewhat from the language we use here, we read Gannet as holding that the Virgin Islands statutes requiring employers to pay back wages for violating Virgin Islands minimum wage and hour laws do not stand as an obstacle to the purposes of the INA. It does not follow from this that the statute requiring termination of an alien's employment does not stand as an obstacle to the purposes of the INA. As Judge Maris noted, in the context of pre-emption, "each case must be decided on its own particular facts." Gannet, supra, 6 V.I. at 319,282 F.Supp. at 441.
 
 
 13
 We now turn to an examination of the two statutory schemes. Both the INA and the Virgin Islands statutory provisions present a comprehensive scheme for regulating the employment of nonimmigrant alien workers. We agree with the analysis of those statutes presented by the United States in its amicus brief.
 
 
 14
 The federal statutory provision establishing a nonimmigrant class of aliens "coming temporarily to the United States to perform . . . temporary services or labor" contains only one restriction: they may come to this country only if unemployed persons capable of performing such services cannot be found here. The provision is silent as to any controls to which these aliens will be subject after they arrive in this country. Section 214 of the INA, 8 U.S.C. § 1184, subsection (a), provides, however, that the admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe. Additionally, subsection (c) of that section sets forth a special petition procedure for the class of nonimmigrants described in 8 U.S.C. § 1101(a)(15)(H). It states, in part, that the question of importing any nonimmigrant under the "H" provisions in any specific case or specific cases shall be determined by the Attorney General after consultation with appropriate agencies of the Government, upon petition of the importing employer. The petition is to be in such form and contain such information as the Attorney General shall prescribe. Thus, the Attorney General has broad authority over the circumstances and conditions under which the alien temporary workers may come to this country and under which their stay in this country is governed. Therefore, the regulations of the Immigration and Naturalization Service have particular importance here in determining the pre-emption question.
 
 
 15
 Part 214 of Title 8, Code of Federal Regulations, contains the Service's regulations for nonimmigrants. Under those regulations, an alien defined in 8 U.S.C. § 1101(a)(15)(H)(ii) must be the beneficiary of an approved visa petition filed on Form I-129B, which gives such alien H-2 status. The petitioner for one seeking H-2 status would be the employer. If an alien in the United States desires to perform temporary services for another petitioner, a new petition on Form I-129B must be submitted, and, if the petition is approved, an extension of stay may be granted without requiring the submission of an application for an extension (Form I-539). 8 C.F.R. 214.2(h)(1).
 
 
 16
 An H-2 petition must be accompanied by either a certification by the Secretary of Labor, stating that qualified persons in the United States are not available and that the employment of the beneficiary will not affect the wages and working conditions of workers in the United States similarly employed, or a notice that such certification cannot be made. If a labor certification is refused, the petitioner may present countervailing evidence that qualified persons in the United States are not available and that the employment policies of the Department of Labor have been observed. Such evidence will be considered in the adjudication of the petition. 8 C.F.R. 214.2(h)(3)(i). A statement shall be furnished with the petition describing in detail why it is necessary to bring the alien to the United States and whether the need is temporary, seasonal or permanent. 8 C.F.R. 214.2(h)(3)(iii).
 
 
 17
 The petitioner is notified of the decision and, if the petition is denied, of the reasons for denial and of his right to appeal. 8 C.F.R. 214.2(h)(6). An approved petition is valid for not more than one year from the date of its approval, if a labor certification is not required. If a labor certification has been attached to an H-2 petition, the approval of the petition is not valid beyond the validity of the certification. When the certification does not have an expiration date, the petition's approval cannot exceed one year from the date on which the certification was issued. 8 C.F.R. 214.2(h)(7).
 
 
 18
 A beneficiary may apply for admission to this country while the petition is valid or during the period of an extension of his temporary stay. The authorized period of the beneficiary's admission is governed by the period of established need for his temporary services but cannot exceed the date of the petition's validity or the date until which his temporary stay had been previously authorized by the Service. 8 C.F.R. 214.2(h)(9). An extension of stay may be authorized in increments of not more than 12 months each under the same terms and conditions that apply to an admission, except that an applicant for an individual extension is not required to file a new petition to continue previously authorized employment. A new petition is required on behalf of an applicant who seeks to pursue employment or training other than that previously authorized, and, if he is maintaining status, he may be granted an extension of stay for the period of the approved petition's validity without an application therefor on Form I-539. An H-2 alien's application for extension must be accompanied by a labor certification or a notice that such certification cannot be made. In any event, an H-2 cannot be granted an extension which would result in an unbroken stay in the United States for more than three years. 8 C.F.R. 214.2(h)(11). Any unauthorized employment by a nonimmigrant constitutes a failure to maintain status within the meaning of § 241(a)(9) of the Act, 8 U.S.C. § 1251(a)(9), see also 8 C.F.R. 214.1(c), and may result in deportation.
 
 
 19
 These regulations along with the broadly-worded statutory provisions provide a comprehensive and detailed federal scheme governing an H-2's admission to this country and his stay while here. They carry out the Attorney General's complete responsibility, granted by the statute, over the petition process for importing temporary labor and over matters relating to the length of time and the conditions under which the workers may remain in this country. As noted, the United States Department of Labor also plays a role in this process through the issuance of labor certifications. 8 C.F.R. 214.2(h)(3).
 
 
 20
 In determining if this statutory scheme conflicts with Virgin Islands law, it is helpful to examine its application to the particular circumstances of the Virgin Islands. This topic has been the subject of thorough scrutiny in a special congressional study, Subcommittee on Immigration, Citizenship and International Law of the House Committee on the Judiciary, 94th Cong., 1st Sess., Nonimmigrant Alien Labor Program on the Virgin Islands of the United States (Comm. Print 1975) (hereinafter cited as 1975 Comm. Print).
 
 
 21
 Prior to the enactment of the INA, the controls over the nonimmigrant alien workers who had been admitted to the Virgin Islands under special circumstances, as well as over aliens working illegally, were slight. See 1975 Comm. Print 3-4, and Appendix, 1, 57-59. In the early years after the INA became effective, the Immigration Service construed the H-2 provisions as requiring that the employment be very temporary. The hotel and agricultural jobs were considered to be recurring and seasonal in nature and they were not included within the interpretation. Employers in those fields, who had previously relied heavily on nonresident alien workers, began to complain of shortages of help. Id. at 7-11.
 
 
 22
 In 1954 a special House subcommittee held hearings and studied this problem. Concluding that the Service's interpretation of the word "temporary" was too restrictive, the subcommittee recommended a more realistic and expeditious application of the H-2 provisions for natives of the island of Tortola in the British Virgin Islands. This application of H-2 subsequently was expanded to other Caribbean Islands and other occupations were brought within the expanded construction of the INA. Id. at 14-15. During the 1960s, the alien labor program expanded to the point where, by the end of the decade, alien workers constituted roughly half of the Virgin Islands labor force, and temporary alien workers were economically essential to the Virgin Islands. Id. at 15-16.
 
 
 23
 The increase in alien workers is attributable to several factors. Much of the native population apparently is unwilling to accept agricultural, domestic labor and tourist industry jobs, considering them degrading. Id. at 15. Secondly, the Immigration and Naturalization Service has exempted aliens from nearby islands from the statutory requirement of presenting a visa. 8 C.F.R. 212.1(b). Third, throughout most of the alien labor program, the Virgin Islands Employment Service (later the Virgin Islands Security Agency), which is an affiliate of the United States Department of Labor, issued labor certifications required for the importation of temporary workers, but received little supervision from Washington. Id. at 17-20, 22-26. Finally, workers were allowed to bring their spouses and minor children to the Islands with them, at first as nonimmigrant visitors and later as H-4 nonimmigrants after the enactment of Public Law 91-225, 84 Stat. 116, 8 U.S.C. § 1101(a)(15)(H) (iii), which specifies that the spouse and children of the H-2 may accompany him. 1975 Comm. Print at 31-33.
 
 
 24
 The Virgin Islands statutory provisions in question here also present a comprehensive scheme for regulating the employment of nonimmigrant workers. Title 24, Chap. 6, of the Virgin Islands Code, §§ 125 et seq., entitled Protection of Resident Workers and added by the Act of February 25, 1964, was designed to protect a wide range of interests of persons in the domestic labor market from the competition of nonresident aliens. Section 125 defines the term "nonresident worker" as any person capable of performing services or labor who is a nonimmigrant admitted to the United States under the provisions of 8 U.S.C. § 1101(a)(15)(H)(ii) and related statutory provisions. That section also defines the term "resident worker" as any person capable of performing services or labor who is a citizen of the United States or an alien lawfully admitted for permanent residence under the provisions of the INA, as amended. The statute also provides that resident workers are to be given preference in employment wherever possible, and nonresident workers are to be employed only to supplement the labor force of available and qualified resident workers. Section 126. No employer is to employ a nonresident worker except in strict accordance with the provisions of the chapter and regulations issued thereunder.
 
 
 25
 Section 127 sets forth the duties of the Employment Service and the Commissioner of Labor. These duties are prescribed, however, "without limitation on the scope or extent of powers, duties or responsibilities vested by other provisions of this chapter or of any other federal or territorial law and/or regulation." The statute also contains a number of provisions relating to the recruitment of temporary alien workers and the clearance orders for filling the positions. Section 128. Subsection (d) of § 128 requires that, before submission of a clearance order to the Immigration and Naturalization Service, a written agreement from the employer must be submitted to the Commissioner of Labor in a prescribed form covering the need of having the workers for immediate employment, compliance with minimum recruitment wages and employment conditions, and workweek guarantees. It also provides that the Virgin Islands Employment Service shall notify the Commissioner, as well as the Immigration Service, whenever a qualified resident worker becomes available for a position occupied by an H-2. This notice is no doubt required because of the provisions of § 129, the one particularly involved here.
 
 
 26
 Section 129(a) provides that the Commissioner of Labor shall give written notice to the employer whenever he ascertains that there is an occupationally qualified resident worker available to fill the position of a nonresident worker, following which the employer must terminate the employment of the nonresident worker. The Commissioner may give a similar notice if he determines, after investigation and hearing, that the public interest and welfare, demand such action. If a resident worker who has replaced a nonresident through this process is subsequently discharged, he may not be replaced by a nonresident, unless the resident was discharged on certain specified grounds and there is no other resident available. Subsection (b). Moreover, if a resident worker believes he was wrongfully discharged in violation of the section's provisions, he may file a complaint with the Commissioner and, if the Commissioner finds in the resident worker's favor, he will order his reinstatement. Subsection (c). Section 129(e) provides that no resident worker shall be laid off while a nonresident worker is retained in the same occupational classification for which the resident worker is qualified and available.
 
 
 27
 The Commissioner has a duty to investigate all complaints of violations of the provisions of § 129 and, after notice and hearing, issue an order disposing of the matter. He may petition any court of competent jurisdiction of the Virgin Islands for the enforcement of such an order. Section 132. In addition, an employer who wilfully violates the chapter's provisions, or any rules or regulations issued pursuant thereto, shall be guilty of a misdemeanor. Section 135.
 
 
 28
 The statute also provides that the Employment Service, in cooperation with the Commissioner, shall conduct continuing surveys and recommend other measures for alleviating shortages and reducing the need for nonresident workers. Section 127(b). Although this provision is broad enough to encompass programs to improve the quality of the local labor market and other measures which would in no way conflict with the immigration procedures, it also aids the effectiveness of § 129 in terminating the employment of a nonresident prior to the expiration of his authorized stay here under the Immigration and Nationality Act.
 
 
 29
 This examination of these two statutory schemes of Congress (amplified by regulations in 8 C.F.R. Ch. 1) and the Virgin Islands legislature shows that, although they share some common purposes, they are in direct conflict in the present case. The common purposes are to assure an adequate labor force on the one hand and to protect the jobs of citizens on the other.[10] Any statutory scheme with these two purposes must inevitably strike a balance between the two goals. Clearly, citizen-workers would best be protected and assured high wages if no aliens were allowed to enter. Conversely, elimination of all restrictions upon entry would most effectively provide employers with an ample labor force. The conflict arises because the Virgin Islands and the United States strike the balance between these two goals differently.
 
 
 30
 The provision for termination of an alien's employment and stay at issue in this case illustrates this. The federal provisions imply that one of the considerations behind the federal regulations is continuity of the work force. Therefore, an employer can expect that an alien-worker's stay will not be terminated under federal law until the date specified on the Labor Department's certification or, if the certification does not specify a date, for a period of one year. In addition to providing employers a reasonable expectation that there will not be frequent and disruptive turnovers in his work force due to Government action, the federal regulations provide aliens with an incentive to come to the United States; they know they will be able to work until the expiration of the certificate or for a period of at least one year.
 
 
 31
 By comparison, the Virgin Islands statute strikes the balance more in the direction of protection of citizen-workers, for under the Virgin Islands statute an employer may be ordered to terminate the employment of an alien at any time if the Virgin Islands Commissioner of Labor determines that a qualified resident worker is available or if he determines that such termination is in the public interest. Thus, under the territory's scheme, the employer and the alien have no assurance as to the duration of employment. The Government of the Virgin Islands thereby may shorten the period of stay granted to an alien worker by the United States by causing him to fail to comply with a condition of his stay under federal law: continued employment. Because of the different emphasis the two statutory schemes place on the purposes of job protection and an adequate labor force, we conclude that § 129(a) stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the INA and is, therefore, invalid under the Supremacy Clause of the United States Constitution,[11] being in conflict with the INA.
 
 
 32
 In De Canas v. Bica, supra, the Court said:"Of course, state regulation not congressionally sanctioned that discriminates against aliens lawfully admitted to the country is impermissible if it imposes additional burdens not contemplated by Congress:
 
 
 33
 " 'The Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization. See Hines v. Davidowitz, 312 U.S. 52, 66, 61 S.Ct. 399, 85 L.Ed.2d 581. Under the Constitution the states are granted no such powers; they can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states. State laws which impose discriminatory burdens upon the entrance or residence of aliens lawfully within the United States conflict with this constitutionally derived federal power to regulate immigration, and have accordingly been held invalid.' Takahashi v. Fish & Game Comm'n, 334 U.S. 410, 419, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948) (emphasis supplied)."
 
 
 34
 Accordingly, the judgment of the district court will be reversed and the case remanded for action consistent with this opinion.
 
 
 
 [1]
 24 V.I.C. § 129(a) provides in pertinent part:
 "Replacement of nonresident employees with residents
 "(a) If at any time subsequent to the employment of a nonresident worker pursuant to a clearance order by the Commissioner, upon notice to such effect by the Employment Service or upon his own investigation, shall ascertain that there is available an occupationally qualified resident worker to fill the position of such nonresident worker, or if at any time the Commissioner finds, after investigation and hearing, that the public interest and welfare demand such action, the Commissioner shall notify the employer in writing and thereupon the employer shall terminate the employment of the nonresident worker. In any case where more than one nonresident worker is employed in the Virgin Islands in a particular job classification for which qualified resident workers become available, the employer who has bonded and employed the last nonresident worker in the job classification shall, in his discretion, terminate the employment of any nonresident alien employed by him in such job classification, and so on until all available qualified resident workers in the particular job classification shall be employed; . . . ."
 The remainder of the section provides in substance as follows:
 (1) resident workers shall be discharged only for just cause and shall not be replaced by a nonresident worker unless so discharged (§ 129(b));
 (2) a hearing shall be held before the Commissioner of Labor for the Virgin Islands for resident workers wrongfully discharged in violation of § 129(b), supra (§ 129(c));
 (3) the employer shall not shorten the workday or workweek of resident workers in order to hire nonresident workers (§ 129(d));
 (4) layoffs are to affect nonresident workers before any resident worker may be laid off (§ 129(e));
 (5) no nonresident worker may fill the position of a striking resident worker (§ 129(f)).
 
 
 [24]
 V.I.C. § 125 contains the following pertinent definitions:
 " 'Nonresident worker' means any person who is capable of performing services or labor and who is a nonimmigrant alien admitted to the United States under the provisions of section 101(a)(15)(H)(ii), Immigration and Nationality Act (June 27, 1952, c. 477, § 101(a)(15)(H)(ii); 66 Stat. 166(a)(15)(H)(ii); 8 U.S.C. § 1101(a)(15)(H)(ii)), and under the provisions of related sections of such Act.
 " 'Resident worker' means any person who is capable of performing services or labor and who is a citizen of the United States or an immigrant alien admitted to the United States for permanent residence under the provisions of the Immigration and Nationality Act, as amended (June 27, 1952, c. 477, § 101 et seq.; 66 Stat. 166 et seq.; 8 U.S.C. § 1101 et seq.)."
 On the facts asserted by Lockhart, the appellant, only § 129(a) is before the court. In the district court, plaintiffs Lespeare and Rogers also asserted that § 129(e) was unconstitutional. The district court found as a fact that neither Lespeare nor Rogers lost his employment through operation of 24 V.I.C. § 129 and dismissed them from the action. Lespeare, Rogers and Lockhart filed a notice of appeal on April 20, 1976. After they had filed, the district court approved their motion for substitution of counsel. Substituted counsel filed no briefs in this court concerning the cases of Lespeare and Rogers. Therefore, these parties apparently have abandoned their appeal and their challenge to § 129(e). Because of this abandonment, the 129(e) issue is not before this court.
 The district court also dismissed the plaintiffs' suit against the United States and the Acting Commissioner of Labor of the Virgin Islands. Plaintiffs challenged the constitutionality of a standardized agreement between the United States and employers which sets forth the conditions of the entry of alien nonimmigrant workers. They also sought to enjoin the enforcement of the provision of the Immigration and Nationality Act relating to deportation against them and all persons similarly situated. These issues also are not before us on appeal.
 
 
 [2]
 This clause contains, inter alia, the following language:
 "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; . . . ."
 
 
 [3]
 48 U.S.C. § 1561 provides that no law shall be enacted in the Virgin Islands which shall deprive any person therein of equal protection of the laws and extends the equal protection clause to the Virgin Islands. Cf. Chapman v. Gerard, 456 F.2d 577 (3d Cir. 1972) (Virgin Islands statute barring aliens from participating in territorial scholarship fund held invalid)
 
 
 [4]
 We note that the district court based its decision in part on the fact that "the United States Attorney and officials of the Immigration and Naturalization Service have stated to this Court that the local statute does not conflict with federal law." 411 F.Supp. at 128. As noted in note 9 below, the United States, through the Department of Justice, has taken a different position in this court. This change of position by the United States does not preclude us from addressing the issues raised by the Government under the general rule that we do not address on appeal issues not raised in the trial court, United States v. Dansker, 537 F.2d 40, 64 (3d Cir. 1976); United States v. Moore, 453 F.2d 601, 604 (3d Cir. 1974); because we deem this case to fall within the exception that allows that rule to be relaxed "whenever the public interest . . . so warrants." Franki Foundation v. Alger-Rau Associates, Inc., 513 F.2d 581, 586 (3d Cir. 1975), and cases there cited
 
 
 [5]
 See note 1, supra, for explanation of Lockhart's substitution as appellant in this matter
 
 
 [6]
 This section establishes a class of nonimmigrant aliens defined as follows:
 "(H) an alien having a residence in a foreign country which he has no intention of abandoning . . . (ii) who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country. . . ."
 
 
 [7]
 This section provides in pertinent part:
 "(3) Petition for alien to perform temporary service or labor (i) Labor certification. Either a certification from the Secretary of Labor or his designated representative stating that qualified persons in the United States are not available and that the employment of the beneficiary will not adversely affect the wages and working conditions of workers in the United States similarly employed, or a notice that such a certification cannot be made, shall be attached to every nonimmigrant visa petition to accord an alien a classification under section 101(a)(15)(H)(ii) of the Act."
 
 
 [8]
 As Chief Judge Seitz has noted, the touchstone of the second and third bases of pre-emption is also congressional intent to pre-empt. In these cases,
 "(T)his intent is inferred or presumed from the nature of the federal action rather than made explicit in the statute or legislative history. That a presumption as to Congressional intent is fundamental to preemption in cases where the nature of the subject matter is thought to require exclusive federal authority is evident from the opinion in De Canas v. Bica, supra : the Court said that Congressional 'intent' to preempt state authority could not be 'derived' from the comprehensiveness of the federal scheme involved, the Immigration and Nationality Act. 424 U.S. at 359, 96 S.Ct. 933. With respect to cases where it is alleged that specific state legislation 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' we again conclude that it must be reasonable to presume that Congress would have intended to preclude the state action in question."
 Amalgamated Transit Union v. Byrne, No. 76-2050, Slip op. at p. 8 (3d Cir. 9/22/77).
 
 
 [9]
 The amicus brief filed in this court on July 20, 1977, concludes with the following language:
 "In the difficult situation presented by the Nonimmigrant Labor Program on the Virgin Islands, we suggest that the proper course for this Court is to rule that the Virgin Islands statute is invalid on the basis of the statutory and regulatory provisions involved, despite the ways in which the unique development of the H-2 program has caused the federal administration of that program to deviate somewhat from the federal regulatory scheme. The situation should be left as the responsibility of the federal agencies involved, and, possibly, the Congress, in line with the recommendations in the 1975 Report, pp. 54-56 (1975 Comm. Print discussed infra )."
 Brief for United States as Amicus Curiae at 32-33.
 Although appellee was given ample opportunity to comment on this brief, it has not done so.
 
 
 [10]
 As Judge Maris has stated:
 "(T)he Congressional policy is that American labor be protected and that temporary workers be admitted only when it tends to serve the national economy, the cultural interests, and the welfare of the United States, by facilitating the entry for temporary residence of aliens whose specialized experience or exceptional ability would best serve the American needs."
 Gannet Corporation v. Stevens, supra, 6 V.I. at 327, 282 F.Supp. at 445.
 
 
 [11]
 See note 2 above